IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SPENCER ONDRISEK and                                              PLAINTIFFS
SETH CALAGNA

vs.                                    Civil No. 4:08-cv-04113

BERNIE LAZAR HOFFMAN a/k/a                                         DEFENDANT
TONY ALAMO

## MEMORANDUM OPINION

Before the Court are the ownership claims to the six properties subject to the Court's Writ

of Execution. ECF Nos. 102-128, 135-140.  On October 9, 2013, the Court held a bench trial to

address the validity of these ownership claims.  Claimants Angela Morales, Sandford White, Thomas

Scarcello, Ben Edwards, and Donn Wolf (hereinafter, "Claimants") were present at this trial and

were represented by counsel.  ECF No. 189.  Counsel for Plaintiffs were also present at this trial.

*Id.*

The Court has considered these claims and, as outlined in this Memorandum Opinion, finds

these Claimants have no ownership interest in these properties and the sale of these properties shall

proceed as outlined in the final section of this Memorandum Opinion.

I.    **Background:**

On June 2, 2011, the jury entered a verdict on behalf of Plaintiffs Spencer Ondrisek and Seth

Calagna and against Bernie Lazar Hoffman also known as Tony Alamo for $66,000,000. (Hereinafter

"Tony Alamo" or "Alamo")  ECF No. 61.  The Court adopted the jury verdict and entered a Final

Judgment for Plaintiffs in the amount of $66,000,000.  ECF No. 62.  Thereafter, Defendant appealed

this Final Judgment to United States Court of Appeals for the Eighth Circuit.  ECF No. 73.

The Eighth Circuit reduced this award to a total of $30,000,000 for both Plaintiffs.  ECF No.

81.  The Court then entered an Amended Final Judgment totaling $30,000,000 plus interest, which was consistent with the Eighth Circuit's mandate.  ECF No. 82.

On February 4, 2013, Plaintiffs filed a Motion for Writ of Execution, seeking to satisfy this judgment and execute on six different properties they claimed were being held for Tony Alamo. ECF No. 86.  None of these properties are titled in Tony Alamo's name.  *Id.*  On April 2, 2013, the Court held a hearing to address this requested Writ of Execution.  ECF No. 97.

Thereafter, on April 15, 2013, based upon the evidence submitted for purposes of the April 2, 2013 hearing, the Court found at least a part of these properties were being held "for his [Alamo's] . . . use" and were therefore subject to execution in order to satisfy this judgment.  *See* Ark. Code Ann. § 16-66-201(6).  ECF No. 98.  Based upon this finding, the Court granted the Writ of Execution and ordered the U.S. Marshal to seize six different properties described in the Writ of Execution and prepare them for sale.  ECF Nos. 98, 101.

These six different properties are as follows:

1.      4301 Windsor Drive, Fort Smith, Sebastian County, Arkansas (gym building);

2.      4401 Windsor Drive, Fort Smith, Sebastian County, Arkansas (church building);

3.      800 S. 4th Street, Fort Smith, Sebastian County, Arkansas (warehouse);

4.      601 N. 17th Street, Fort Smith, Sebastian County, Arkansas (restaurant parking lot);

5.      602 N. 16th Street, Fort Smith, Sebastian County, Arkansas (restaurant); and

6.      120 N. 16th Street, Fort Smith, Sebastian County, Arkansas (house).  ECF No. 101.

Consistent with Arkansas Law, the Court then directed "[a]ny person or entity asserting an ownership interest in the properties" to file a claim with the U.S. Clerk in writing by May 6, 2013. ECF No. 101.  Eighty-one claims to these properties were filed.  ECF Nos. 102-128, 135-140.  The

2

Court then set an evidentiary hearing to address these claims and to determine whether any of the individuals who filed claims has standing to contest the sale of these six properties.  ECF No. 170.

The Court held this evidentiary hearing on September 6, 2013.  ECF No. 172.  Thereafter, on September 13, 2013, the Court found only six of these individuals has standing to assert an ownership interest in these six properties.  ECF No. 174.  These six individuals are Angela Morales, Sandford White, Thomas Scarcello, Ben Edwards, Donn Wolf, and Christhiaon Coie.  *Id.*

The first five individuals were found have to standing based upon either their name appearing on the title or their claim that they paid the down payment or a portion of the property purchase price. *Id.*  The final individual--Christhiaon Coie–was found to have standing because she has a judgment against Tony Alamo in the amount of $100,000.00 plus interest.  *Id.*  A bench trial was then set to determine the validity of Claimants' ownership interests.  *Id.*

## II.   **Bench Trial:**

The Court held this bench trial on October 9, 2013.  ECF No. 189.  Angela Morales, Sandford White, Thomas Scarcello, Ben Edwards, and Donn Wolf were present at this trial and testified.  *Id.*  Because her claim was legal in nature and based only upon being judgment creditor, Christhiaon Coie was not required to be present but instead submitted pretrial briefing on the issue of the priority of her judgment.  ECF Nos. 177-178, 181.

During this bench trial, Plaintiffs presented deposition excerpts from the depositions of Tony Alamo, Steve Johnson, Sally Demoulin, Jessica Cooper, and Sharon Alamo.  Plaintiffs also presented witness testimony of Thomas Scarcello (live) and Melvin Warren Fagan, Jr. (by phone).

Plaintiffs admitted twelve exhibits:

1.     The bankruptcy petition filed by Thomas Scarcello on September 9, 2008;

3

2.      The bankruptcy trustee's examination of Thomas Scarcello on December 8, 2009;

3.      A notebook of e-mails from Tony Alamo from the Trulincs e-mail system at the Federal Bureau of Prisons;

4.      An e-mail from Tony Alamo to Sharon Alamo dated December 7, 2012;

5.      An e-mail from Tony Alamo to Sharon Alamo dated November 28, 2012;

6.      An e-mail from Tony Alamo to Sharon Alamo dated September 13, 2012;

7.      An e-mail from Tony Alamo to Sharon Alamo dated August 27, 2012;

8.      Property records for the six properties at issue in the Writ of Execution;

9.      Transcripts of the deposition excerpts presented during the bench trial;

10.     Plaintiffs' Request for Writ of Execution and accompanying exhibits;

11.     Audio transcripts from Tony Alamo while he was incarcerated at the Bowie County Correctional Facility; and

12.     Deposition transcript of the oral deposition of Jessica Cooper.

The Claimants admitted one exhibit: a Tony Alamo Christian Ministry DVD.  The Court now enters the following findings of fact and conclusions of law regarding the ownership claims of the six Claimants.

**III.    Findings of Fact:**

The Court finds the following general facts and the following specific facts as to each of the Claimants:

**General Findings**

1.      Tony Alamo is a convicted sex offender who is currently serving a life sentence[1] in federal

---

[1] Alamo was sentenced as follows: Count 1 - 360 months; Count 2 - 360 months; Counts (3 and 4) - 180 months each; Count 5 - 120 months; Count 6 - 180 months; Counts (7, 8 and 9) - 120 months

prison after being convicted on ten counts of transporting a minor across state lines with the intent to engage in criminal sexual activity. *United States v. Hoffman,* 4:08-cr-40020, ECF No. 165 (W.D. Ark. Feb. 8, 2010).

2.     Tony Alamo is the self-proclaimed pastor and leader of the entity known as Tony Alamo Christian Ministries ("Ministry").  Plaintiffs' Exs. 4-5. ("Pastor Tony"); Plaintiffs' Ex. 6 ("leave the Pastoring of the church to me"); ECF No. 189, P. 79, lines 12-18; Plaintiffs' Ex. 11, Tab 7, P. 9, lines 1-4; Plaintiffs' Ex. 9, Tab 1, P. 2, 122:06-07 (Tony Alamo's testimony "I'm the pastor and–yeah, don't tangle with me.").

3.     This entity is not incorporated, and "Tony Alamo Christian Ministries" is simply a name assigned by Tony Alamo to the entity.  Plaintiffs' Ex. 9, Tab 2, P. 1, 008:10-14 ("Q: All right.  Tony Alamo Christian Ministries, that's just a name, isn't it?  A: Yes.  Q: It's not an organization, is it?  A: Right").

4.     Tony Alamo has been in this position for approximately fifty years.  ECF No. 189, P. 79, lines 12-18; Plaintiffs' Ex. 9, Tab 2, P. 1, 006:02-04 (Tony Alamo's testimony that he's "been a pastor for around 50 years").

5.     Tony Alamo makes the ultimate decisions for the Ministry and has managed the operations of the Ministry even while in jail and federal prison.  Plaintiffs' Exs. 4-6; ECF No. 189, P. 102, lines 7-14 (testimony from Mr. Fagan that "nothing goes on without his approval").

6.     Several members of the Ministry claim Tony Alamo does not control the operation of the Ministry.  ECF No. 189, P. 80, lines 6-9; ECF No. 189, P. 123, lines 6-18.

7.     However, none of this testimony is credible.  For example, Angela Morales testified Tony

---

each; and Count 10 - 360 months.  All terms to run consecutively to each other.

Alamo had no "knowledge of whatsoever" about the roof at the church at 4401 Windsor Drive needing repairs.  ECF No. 189, P. 120, lines 5-16.

8.    Despite this testimony, on August 31, 2012, over a year ago, Sharon Alamo notified Tony Alamo while he was in prison of the status of the roof at this church, and Tony Alamo admonished her because she had not reported it to him sooner: "GOD tells everyone to report things that happen [to me]."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20689.

9.    Thomas Scarcello  testified Tony Alamo does not direct operations at the Ministry, and he testified that he had not even talked to Tony Alamo in "over five years."  EF No. 189, P. 80, lines 7-9.

10.    This is at best a misrepresentation of the facts.  It is clear from the evidence submitted Thomas Scarcello has been in communication with Tony Alamo in the last five years. Indeed, in an e-mail dated October 15, 2012, Tony Alamo gave directions to Sharon Alamo that Thomas Scarcello needed "to find a wholesaler" for purchasing food at the church at 4401 Windsor Drive.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20774.

11.    The Claimants' own evidence submitted at the bench trial in this matter supports Plaintiffs' claims regarding Tony Alamo's level of control over the Ministry.  Claimants' Ex. 1.  For example, in this video, Tony Alamo's name is featured on the properties (1:13), on Ministry buses (1.16), on banners (1.46, 4:56), and on essentially every piece of property used by the Ministry, including much of the clothing worn by Ministry members.

12.    Testimony from Melvin Fagan, an inmate recently confined with Tony Alamo, also contradicts the Ministry members' claims that Tony Alamo currently has no control over the daily operations.  ECF No. 189, P. 102, lines 7-14.

13.    Further, there are at least 303 e-mails from Tony Alamo dated during less than a seven-

month period from August 27, 2012 to March 11, 2013 which demonstrate his level of control over the Ministry.  Plaintiffs' Ex. 3.  This number amounts to over one e-mail per day or over 43 e-mails per month.

14.     The following 19 e-mails are examples of questions posed to Tony Alamo, from members of the Ministry, while he was in federal prison.  These e-mails span the four-day period from August 27, 2012 to August 31, 2012 and are representative of the level of control Tony Alamo has over the Ministry:

a.     On August 27, 2012, Dave Scheff asked Tony Alamo if he would approve purchases for Ministry members who need a baby bed, toddler bed, bookshelves, bathroom rugs, newborn baby items, and dentures.  Tony Alamo stated these purchased were not approved, and those items could be found "in the church" so they would not need to be purchased.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20673.

b.     On August 27, 2012, Sharon Alamo forwarded to Tony Alamo a request from Nina Romero that she be allowed back into the Ministry.  Tony Alamo denied this request.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20674.

c.     On August 27, 2012, Alys Ondrisek requested Tony Almo resolve a dispute she was having "Shelley." Tony Alamo sided with Alys and responded that Shelley should "bach [back] off."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20675.

d.     On August 27, 2012, "Isabel" forwarded an e-mail to Tony Alamo from their distributor in Peru.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20676.

e.     On August 27, 2012, Sharon Alamo told Tony Alamo she had received the tract "Can a Christian Adulterous Person Remain in a Church of God?"  Tony Alamo directed her to "[g]et a copy of that tract to Beth, Misheal and Nina."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20677.

f.     On August 27, 2012, Sharon Alamo forwarded an e-mail from Tony Alamo's attorney John Wesley Hall where Mr. Hall recognized a "risk" in "exposing to the outside world how the property ownership works."  Tony Alamo responded: "Tell Hall that I will be the one making decisions not him. . . . I dont care what the outside world knows.  GOD told me how to set things up in the church, and I don't believe his philosophy."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20678.

g.     On August 28, 2012, Sharon Alamo gave Tony Alamo an update on the "rental places," including which properties need carpeting, windows replaced, kitchen

flooring, and roofing materials.  Tony Alamo directed her to "Tell Gregg we have no choice but to fix everything and keep it up."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20679.

h.      On August 28, 2012, Sharon Alamo notified Tony Alamo of the repairs that need to be done on the interior and exterior of the "Mini Mansion."  Tony Alamo responded, "There is alot of work that needs to be done there, but we have to do it.  Start with the trees and the entire house first, and then the apartment."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20680.

i.      On August 28, 2012, Tony Alamo directed Sharon Alamo to tell Lisa Thorne he said Abigail should not marry Josiah Kolbek because he is a "liar and his brother is a fornicator."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20681.

j.      On August 28, 2012, Tony Alamo directed Sharon Alamo to tell Jennifer Kolbek to marry Greg Seago in the church so everyone knows they are married and directing Jennifer to confess to the church that "John [Kolbek] stold [stole] four to five hundred thousand dollars from the people in the church and that is why GOD caused him to drop dead."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20682.

k.      On August 28, 2012, Tony Alamo directed Jennifer Kolbek to keep "that retarded kid" Stephen away from his daughter and "to take care of the apartment house."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20683.

l.      On August 28, 2012, Tony Alamo directed Sharon Alamo to tell Gregg Seago to marry Jennifer Kolbek in the church to avoid any scandal.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20684.

m.      On August 30, 2012, Tony Alamo responded to Jennifer Kolbek's e-mail requesting forgiveness.  Tony Alamo admonished her for her behavior by telling her to stop putting her children before God, requested "pictures of all improvements" (apparently to the apartments in Fort Smith), and told her that "Stephen cant be in the church ever."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20685.

n.      On August 30, 2012, Nina Romero asked Tony Alamo if she could have her car that is titled in her name.  Tony Alamo responded that she could have it.  Tony Alamo also wanted to know the truth from David as to whether he has "had sex with prostitutes, watching pornographt [pornography], and making sex calls."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20686.

o.      On August 30, 2012, Jennifer Kolkbek e-mailed Tony Alamo explaining her actions, and Tony Alamo responded that she needed to "stop calling the shots immediately" and to "ask for instructions instead of using your own decision."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20687.

8

p. On August 30, 2012, Sharon Alamo updated Tony Alamo on the status of "Dennis"'s deposition and the status of well at #5.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20688.

q. On August 31, 2012, Sharon Alamo updated Tony Alamo on the status of the roof and e-mails received, and Tony Alamo responded that this was the first he had heard about the roof status and "GOD tells everyone to report things that happen [to him]." Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20689.

r. On August 31, 2012, Sharon Alamo forwarded a report to Tony Alamo from Miriam Krantz who spoke with the DHS worker who "stole all our children."  Tony Alamo responded that "[i]t really helps when the brothers and sisters report these things to me" and directed the people in the Ministry "to read the tract 'fasting' and to do what it says."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20690.

s. On August 31, 2012, Sharon Alamo forwarded the article in the Arkansas Democrat-Gazette related to the Ondrisek verdict.  Tony Alamo responded: "The government is outrageous, the judge is lying. . . . It is obvious that the government has the deck stacked against Christian fundamentalism, but God is the true judge and will pay them their worth."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20691-92.

15. Other examples of Tony Alamo's level of control while he has been in federal prison include the following:

a. Deciding who a Ministry member can drive around in the "witnessesing van";

b. Withholding a member's finances and phone;

c. Directing a road block be put at the entrance of the church in Fort Smith;

d. Directing the sale price and the repairs of the Junkin' for Joy building;

e. Directing responses to member's deposition questions and discovery requests;

f. Directing members to not sign a settlement agreement;

g. Directing which cook to hire in the Fort Smith church;

h. Telling the "Sisters" they are "totally out of order" for making decisions for the Ministry;

i. Deciding whether to advertise in New York and New Jersey;

j. Directing chlorine be added to the water at the church building in Los Angeles;

k.      Approving a husband's request to travel alone with his wife for their son's doctor appointments;

l.      Directing the specifics of the sale of a farm in Baline, KY;

m.      Declaring he pays "for everyones [medical] prescriptions in the church";

n.      Directing Josiah Kolbek and "Abby"'s phones be taken away and directing "Sally not to pay their bills";

o.      Denying a Ministry member permission to buy a computer;

p.      Receiving constant updates and progress reports on the apartments in Fort Smith and approving whether the late fees can be waived for the renters at the apartments;

q.      Communicating with Sally Demoulin regarding the food consumption at the church in Fort Smith;

r.      Deciding whether new members may be included in the Ministry;

s.      Controlling the "contraband" books, movies, TVs, and computers of the Ministry members and declaring "everybody [in the Ministry] has to be scrutinized" to control their contraband;

t.      Directing Sandford White to state that he paid for the property at 100 Pine Drive in Fouke, Arkansas;

u.      Granting approval to Debbie Ondrisek to move back to Fouke, Arkansas and approval to keep a cell phone;

v.      Granting approval to Nina Romero to see her children;

w.      Directing Jennifer Kolbek not to show Disney movies to her children ("Why would we teach our children that elephants can fly?");

x.      Allowing Steve Crook to remain in the Ministry;

y.      Directing Al Reid to not be allowed back in the Ministry;

z.      Approving Paul Bolpa's request to stay alone at night at the at the "Mini-Mansion" in Fouke; and

aa.     Saying he does not "run my church according to how Sally's [Demoulin] ideas of

10

running a church are."

Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20695, 20696, 20698, 20699, 20706, 20707, 20713, 20717, 20721, 20728, 20731, 20734, 20743, 20746, 20748, 20750, 20752, 20757, 20760, 20773, 20774, 20784, 20803, 20806, 20818, 20819, 20833-34, 20836, 20844, 20845, 20849, 20900, 20941.

### Property Ownership

16. Tony Alamo has a history of avoiding creditors.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20762 (after being advised the Plaintiffs' attorney had received bank information, he directed Sharon Alamo to "Draw out that $1400 before they garnish it").

17. Tony Alamo has set up a system of property ownership whereby title to a property is initially placed in one member's name who is deemed by Tony Alamo to be in good standing with the Ministry.  ECF No. 189, P. 118, lines 1-4; Plaintiffs' Ex. 9, Tab 1, Ps. 2-3, 138:05-07 (Tony Alamo testified "if anybody gets out–anybody that's been in the church for 20 years, has been a good citizen there, the properties belong to them").

18. This system is intentional to avoid creditors against Tony Alamo.  This system dates back to the 1990s.  In 1990, Justin Miller was awarded $550,000 in compensatory and punitive damages after being publically beaten.  *See Miller v. Tony and Susan Alamo Found.,* 748 F. Supp. 695, 698 (W.D. Ark. 1990).  The IRS also prosecuted Tony Alamo during this time for unpaid taxes.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20708.

19. When this judgment was executed and the IRS liens were enforced, Tony Alamo lost the property that could be traced back to him.   Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20708 (Tony Alamo's statement that "[a]ll of our property was taken away because of these lies [related to Justin Miller and the IRS]"); Plaintiffs' Ex. 12, P. 84, lines 20-24 (Jessica Cooper's testimony that "when everything happened and the raid and they

were able to tie so much stuff back to Tony, things changed big time, and Tony didn't want people getting anything in–in the ministry name.  He wanted everything in people's names, but the church would make the payments. . . .").

20.    Currently, Tony Alamo has other judgments against him. *See, e.g.,* ECF No. 135-1 (current judgment against Tony Alamo for $100,000.00 dated September of 1995).

21.    To avoid such creditors and future executions, Tony Alamo does not place title to any property in his name.  Plaintiffs' Ex. 7 (regarding the risk of "exposing to the outside world how property ownership works").  ECF No. 189, P. 105, lines 1-6 (testimony from Melvin Fagan that after Tony Alamo lost "over a hundred million dollars worth of properties" in the past, he "outsmarted them [the government] this time by putting them in names–in other people's names").

22.    Significantly, Tony Alamo has discussed this property scheme with his attorney and other members of the Ministry.  On August 27, 2012, Sharon Alamo forwarded an e-mail from Tony Alamo's attorney John Wesley Hall where Mr. Hall recognized a "risk" in "exposing to the outside world how the property ownership works."  Tony Alamo responded: "Tell Hall that I will be the one making decisions not him. . . . I dont care what the outside world knows.  GOD told me how to set things up in the church, and I don't believe his [Hall's] philosophy."  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20678.

23.    Tony Alamo frequently uses this excuse–that title is not in his name–to avoid any responsibility for these properties.  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20763 (attempting to avoid inspection); Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20766 (attempting to avoid his property being confiscated); Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20888 (attempting to avoid execution of this judgment, Tony Alamo directed

Sharon Alamo to "make sure you tell the attorney these properties have never been in my name.  I never owned them.  They have been in other peoples names for years.").

24.    However, when it suits him, he claims the listed title holders do not actually own the properties that are titled in their names.    Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20771 (Tony Alamo stated the two houses by the restaurant which are titled in Steve Johnson's name "are not his"); Plaintiffs' Ex. 9, Tab 2, P. 3, 67:09-13 (Tony Alamo stated Steve Johnson "didn't have any property").

25.    This property is purchased and the mortgage payments are made through one account, the "Bookkeeper account."[2]  ECF No. 189, P. 130, lines 18-21; Plaintiffs' Ex. 10, Exhibit V (checks for the purchase of 4301 Windsor Drive); Plaintiffs' Ex. 9, Tab 3, P. 2, 23:07-10 (Steve Johnson's testimony that the payment for the properties are made out of the church accounts).

26.    Tony Alamo approves the purchases of these properties.  *See, e.g.,* Plaintiffs' Ex. 10, Ex. W (Offer and Acceptance with "TA" approval).

27.    Tony Alamo directly controls the Bookkeeper account through Sally Demoulin and other members of the Ministry.  Plaintiffs' Ex. 11, Tab 8, P. 7 (Tony Alamo told Sally "With my money, you're just very frivolous"); Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20757 (directing Sally "not to pay their [Josiah Kolbek and Abby's phone] bills").

28.    At the time the property is placed in that member's name, Tony Alamo requires the member

---

[2]The claimants who testified during this proceeding referred to a "Bookkeeper account."  The "Bookkeeper account" apparently is the single bank account utilized by the ministry, at Tony Alamo's direction, in managing the financial dealings of the ministry.  Members deposit essentially all their earnings into the "Bookkeeper account" which is then used to provide for the ministry's debts, all at the direction of Tony Alamo.

to also sign a quit claim deed to that property.  Plaintiffs' Ex. 9, Tab 4, Ps. 2-3, 82:11-21 (Sally Demoulin's testimony regarding quit claim deeds being "in other people's names"); Plaintiffs' Ex. 9, Tab 2, P. 3, 68:01-04 (Tony Alamo's testimony that Steve Johnson had "signed a quitclaim deed").

29.     Tony Alamo requires a quit claim deed be signed so that if the Ministry member ever disobeys him or leaves the Ministry, he can take the property out of that person's name and transfer title to another Ministry member.  Plaintiffs' Ex. 9, Tab 4, Ps. 3-4, 95:01-05 (Sally Demoulin's testimony regarding taking title of peoples' names); Plaintiffs' Ex. 9, Tab 1, P. 3, lines 139:08-16; Plaintiffs' Ex. 9, Tab 2, P. 4, lines 68:24-69:01.

30.     Tony Alamo makes the decision to transfer these titles.  Plaintiffs' Ex. 9, Tab 3, P. 2, lines 21:19-23 (Steve Johnson's testimony that Tony Alamo made the decision to take title to properties out of his name).  Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20806 (Tony Alamo demanding to know if someone else took Sandford White off the title at 100 Pine Drive and "If so why?").

31.     Several of the members of the Ministry claim Tony Alamo has no control over who loses their interest in property, but they admit that if they left the Ministry, they could expect to lose their interest.  ECF No. 189, P. 132, lines 20-25; P. 133, lines 1-3; P. 135, lines 7-11 (Angela Morales).  ECF No. 189, P. 147, lines 11-13 ("Q: You recognize that if you leave the church, you lose your property?  A: Yes") (Sandford White).  ECF No. 189, P. 164, lines 10-13 (Ben Edwards).

32.     At any given time, the Ministry member is unsure whether a given property is actually in his or her name.  Plaintiffs' Ex. 9, Tab 3, P. 1, lines 18:15-19:05 (Steve Johnson's testimony that "you wouldn't even know if they already did it [taken property out of your name]");

Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20806 (Tony Alamo stating "As far as I know Sandford still owns 100 Pine. . . . did somebody take Sanford off the ownership papers?  If so why?").

33.    For this reason, there are several deeds to Tony Alamo's properties transferring title back and forth between Ministry members.  Plaintiffs' Ex. 8, Tabs F-I (Deeds transferring title to 4401 Windsor Drive); Plaintiffs' Ex. 10, Ex. D (History of Transfers for 4401 Windsor Drive); Plaintiffs' Ex. 10, Ex. E (History of Transfers for 800 S. 4th Street).

34.    The member who has title to the property put in his or her name does not pay for the property or pays only a nominal amount for the property.  ECF No. 189, P. 117, lines 23-24 (Angela Morales).  ECF No. 189, P. 143, lines 22-23 (Sanford White).  ECF No. 189, P. 154, lines 3-4 (Ben Edwards).

35.    That member recognizes the fact that holding title does not necessarily demonstrate he or she actually owns the property.  ECF No. 189, P. 131, lines 1-11; P. 146, lines 6-12; P. 151, lines 18-20; P. 161, lines 10-11; P. 162, lines 12-14.

36.    Tony Alamo actually controls these properties, including the refinancing and repairs of the properties.  Plaintiffs' Ex. 11, Tab 6, Ps. 10-11 (trying to refinance all of the properties that "are not paid off yet"); Plaintiffs' Ex. 10, Ex. X-Y (approving and directing repairs); Plaintiffs' Ex. 9, Tab 2, P. 3-4, lines 68:12-20 (stating he instructed Steve Johnson to get a lower interest rate on the properties titled in his name).

37.    As further evidence that he controls these properties, Tony Alamo receives constant reports on these properties.  Plaintiffs' Ex. 10, Ex. Z (fire inspection at 4401 Windsor Drive); Plaintiffs' Ex. 10, Ex. AA-BB (report of termites and slab problems at 4401 Windsor Drive).

38.    Tony Alamo has also set up one account, called the Bookkeeper account, whereby the money

donated by Ministry members is used to the pay for the insurance, maintenance, utilities, and property taxes of his properties. ECF No. 189, P. 142, lines 1-16; Ps. 144, lines 18-25; P. 145, lines 1-4. Plaintiffs' Ex. 9, Tab 4, Ps. 6-7, lines 106:22-107:03.

39. Tony Alamo's e-mail communications indicate he also pays his legal fees through this account, and he paid his attorney at least $1,000,000.00 in legal fees in 2012 and 2013 apparently out of this account. Plaintiffs' Ex. 3, Bates Number NPRKOLBEK20768 (Tony Alamo stated, "He [John Rogers] will get $200,000 a month for five months").

40. By contributing this money, the members are relinquishing control of that money to Tony Alamo. ECF No. 189, P. 129, lines 4-7 (Angela Morales's testimony that she could not "just go take that money back" from the Bookkeeper account); P. 145, lines 18-21; P. 150, lines 3-7.

41. Apart from contributing money, some of the members also contributed time and effort to Tony Alamo, such as performing maintenance work. ECF No. 189, P. 156, lines 13-14.

42. The members generally expected Tony Alamo to provide for their physical, spiritual, and financial needs in return for their contributions, but there is has been no evidence of an any written agreement or contract providing that he do so. Claimants' Ex. 1.

43. Such a decision is entirely at Tony Alamo's discretion based upon what he hears "from the Lord." ECF No. 189, P. 164, lines 14-16; Plaintiffs' Ex. 9, Tab 2, P. 7, lines 125:01-10 (Tony Alamo's testimony that in the event of a disagreement, he ultimately makes the decision because he knows he "really hear[s] from the Lord.").

**Angela Morales**

44. Angela Morales is listed as the grantee on a Quit Claim deed dated May 30, 2007 for the property located at 4401 Windsor Drive. Plaintiffs' Ex. 8, Tab G.

45.   Thomas Scarcello quitclaimed this property to her.  Plaintiffs' Ex. 8, Tab G.  ECF No. 189, P. 117, lines 13-17.

46.   The Quit Claim deed states that Angela Morales paid $1.00 and "other good and valuable consideration" for 4401 Windsor Drive.  Plaintiffs' Ex. 8, Tab G.

47.   Angela Morales testified she paid a nominal amount to be put on title to the property 4401 Windsor Drive.  ECF No. 189, P. 117, lines 23-24.

48.   Apart from this nominal amount, Angela Morales did not pay anything for the property at 4401 Windsor Drive.  ECF No. 189, P. 142, lines 1-4.

49.   Angela Morales did not personally pay for any repairs or improvements to 4401 Windsor Drive.  ECF No. 189, P. 142, lines 5-10.

50.   Angela Morales did not personally pay for the taxes, insurance premiums, or utilities at 4401 Windsor Drive.  ECF No. 189, P. 142, lines 11-16.

51.   The Court finds Angela Morales's testimony at the bench trial in this matter on October 9, 2013 was generally not credible regarding her claim to an interest in this property.

**Sandford White**

52.   Sandford White is listed as the grantee on a warranty deed dated September 15, 2004 for the property located at 4401 Windsor Drive.  Plaintiffs' Ex. 8, Tab F.

53.   Sandford White and his wife paid a nominal amount to be put on the title to the property at 4401 Windsor Drive.  ECF No. 189, P. 143, lines 22-23.

54.   Apart from this nominal amount, Sandford White did not pay anything for the property at 4401 Windsor Drive.  ECF No. 189, P. 143, lines 22-23.

55.   Sandford White did not personally pay for any repairs or improvements to 4401 Windsor Drive.  ECF No. 189, P. 145, lines 18-25; P. 145, line 1; P. 148, lines 17-19.

56.   Sandford White did not personally pay for the taxes, insurance premiums, or maintenance cost for the property at 4401 Windsor Drive.  ECF No. 189, P. 144, lines 18-25; P. 145, line 1.

57.   The Court finds Sandford White's testimony at the bench trial in this matter on October 9, 2013 was generally not credible regarding his claim to an interest in this property.

**Thomas Scarcello**

58.   On April 25, 2013, Thomas Scarcello filed a claim with this Court stating he has an ownership interest in the six properties subject to the Writ of Execution in this case.  ECF No. 104.

59.   Thomas Scarcello is not on the title to any of these six properties.  ECF No. 189, P. 74, lines 19-22.

60.   Thomas Scarcello claims his name is on the mortgage to the property located at 800 S. 4th Street.  ECF No. 189, P. 74, lines 14-18.

61.   Thomas Scarcello did not produce any mortgage agreement or contract indicating he is on the mortgage to the property located at 800 S. 4th Street.  ECF No. 189, P. 75, lines 19-22.

62.   On May 30, 2007, Thomas Scarcello quitclaimed his interest in 800 S. 4th Street to Angela Morales.  Plaintiffs' Ex. 8, Tab M.

63.   Thomas Scarcello claims he quiclaimed his interest in 800 S. 4th Street in 2007 so that he could "pray and read and get ahold of God." ECF No. 189, P. 79, lines 10-11; Plaintiffs' Ex. 8, Tab M.

64.   The Court finds he actually quitclaimed his interest because he was sued civilly on February 13, 2007 by Tempur-Pedic International, Inc. for allegedly selling donated mattresses. *Tempur-Pedic International, Inc. v. Thomas Scarcello et al.,* 2:07-cv-02015 (W.D. Ark.

18

2007).

65.   Thomas Scarcello filed a bankruptcy petition in September of 2008.  Plaintiffs' Ex. 1.

66.   In that bankruptcy petition, Thomas Scarcello represented there was no property "owned by another person" that he holds or controls.  Plaintiffs' Ex. 1, P. 26.

67.   In that bankruptcy petition, Thomas Scarcello also represented he owned no interest in real property.  Plaintiffs' Ex. 1, P. 8.

68.   Faced with his previous representation to the bankruptcy court that he had no interest in real property as of 2008, Thomas Scarcello recanted his original claim to ownership in 800 S. 4th Street and stated his only interest was as "a member of the church."  ECF No. 189, P. 111, lines 15-18.

69.   The Court finds Thomas Scarcello's testimony at the bench trial in this matter on October 9, 2013 was generally not credible regarding his claim to an interest in any of the subject properties.

**Ben Edwards**

70.   Ben Edwards is listed as the grantee on a warranty deed dated April 21, 2004 for the property located at 4301 Windsor Drive.  Plaintiffs' Ex. 8, Tab C.

71.   Ben Edwards did not pay anything to be put on the title to the property at 4301 Windsor Drive.  ECF No. 189, P. 154, lines 3-4.

72.   After the gym was purchased, Ben Edwards expended effort in church upkeep, including investing time and labor into the property.  ECF No. 189, P. 156, lines 13-14.

73.   Ben Edwards understood that if he left the Ministry, he would forfeit his interest in 4301 Windsor Drive.  ECF No. 189, P. 164, lines 7-13.

74.   The Court finds Ben Edward's testimony at the bench trial in this matter on October 9, 2013

was generally not credible regarding his claim to an interest in this property.

**Donn Wolf**

75.     Donn Wolf is listed as the grantee on a warranty deed dated June 10, 1999 for the property located at 4401 Windsor Drive.  Plaintiffs' Ex. 8, Tab E.

76.     Donn Wolf claims he obtained a loan to purchase 4401 Windsor Drive, but he produced no evidence demonstrating such a loan.  ECF No. 189, P. 175, lines 16-24.

77.     Donn Wolf claims he paid the downpayment for 4401 Windsor Drive, but he produced no evidence demonstrating he actually paid this downpayment.  ECF No. 189, P. 174, lines 8-18.

78.     The property at 4401 Windsor Drive was originally purchased for Ministry use in 1993 by H. Ray Hodnett not Donn Wolf.  Plaintiffs' Ex. 8, Tab D.

79.     Donn Wolf claims he purchased the property in 1993, but title was not actually placed in his name until 1999.  ECF No. 189, P. 167, lines 5-9.  It is unclear why there is a lapse of six years.

80.     Donn Wolf was not aware his name was not placed on the title until 1999.  ECF No. 189, P. 176, lines 13-16.

81.     Donn Wolf claims he personally made payments on the loan for 4401 Windsor Drive, but he later stated the payments were made by the Ministry through the Bookkeeper account. ECF No. 189, P. 168, line 25; P. 169, lines 1-2.

82.     Donn Wolf acknowledges the taxes, insurance, and repairs to the property at 4401 Windsor Drive were paid through the Bookkeeper account.  ECF No. 189, P. 169, lines 1-2; P. 182, line 25; P. 183, lines 1-4.

83.     Donn Wolf is listed as a grantee on a warranty deed dated September 15, 2004 for the

property located at 120 N. 16th Street.  Plaintiffs' Ex. 8, Tab X.

84.  Donn Wolf claims he obtained a loan to purchase this property, but he produced no evidence demonstrating such a loan exists or has ever existed.  ECF No. 189, P. 184, lines 7-18.

85.  Donn Wolf acknowledges the payments to the loan and expenses and upkeep on the property at 120 N. 16th Street were made by the Ministry through the Bookkeeper account.  ECF No. 189, P. 185, lines 5-8.

86.  Donn Wolf testified Shelley Garner lives at the property at 120 N. 16th Street and has lived there for six to eight years.  ECF No. 189, P. 189, lines 18-20.

87.  Donn Wolf testified Shelley Garner has never paid rent to him to live at this property.  ECF No. 189, P. 189, lines 21-23; P. 190, lines 2-3.

88.  Donn Wolf testified Shelley Garner does not pay rent to the other titleholders on the property at 120 N. 16th Street.  ECF No. 189, P. 190, lines 9-11.

89.  Donn Wolf was given the opportunity to provide documentation in support of his claims. ECF No. 189, P. 191, line 25; P. 192, lines 1-14.

90.  Despite being given this opportunity to produce these documents after the bench trial in this matter, Donn Wolf has produced no additional documentation to the Court regarding these alleged loans or downpayments.

91.  Donn Wolf acknowledged Tony Alamo has the power to force him out of the Ministry and has done so in the past.  ECF No. 189, P. 186, lines 1-7.

92.  The Court finds Donn Wolf's testimony at the bench trial in this matter on October 9, 2013 was generally not credible regarding his claim to an interest in any of the subject properties.

**Christhiaon Coie**

93.  On September 14, 1995, Christhiaon Coie obtained a $100,000.00 judgment against Tony

Alamo.  ECF No. 135-1.

94.   On August 10, 2005, Christhiaon Coie petitioned to revive her judgment.  ECF No. 181.

95.   On September 28, 2005, that petition was granted.  ECF No. 135-3.

96.   On November 25, 2008, Plaintiffs filed the current action, and a judgment was entered in their favor on June 30, 2011.  ECF Nos. 1, 62.

97.   After Plaintiffs' suit was filed, Christhiaon Coie filed a declaratory action in the circuit court of Sebastian County, Arkansas, CV2009-1854(V), to have several different properties (including those at issue with this Writ of Execution) declared to be Tony Alamo's properties.  ECF No. 135-5.

98.   On November 13, 2009, Christhiaon Coie also filed a Notice of Lis Pendens as to these six properties.  ECF No. 135-6.

99.   Based upon the record before the Court, no further action has been taken in the case filed by Christhiaon Coie, and this case has been pending for nearly four years.

100.  Unlike Christhiaon Coie, Plaintiffs have been diligent in their attempts to execute on this judgment.

101.  Once the Amended Final Judgment was entered on December 5, 2012, Plaintiffs began actively attempting to execute on this judgment.  ECF Nos. 83-84 (seeking to depose Sharon Alamo).

102.  Indeed, just two months later, on February 4, 2013, Plaintiffs filed a Motion for Writ of Execution to execute upon the six properties at issue in the Writ of Execution.  ECF No. 86.

103.  Since that time, Plaintiffs have taken countless depositions and attended several hearings and taken all the steps necessary in attempt to demonstrate these properties are Tony Alamo's

properties.  ECF Nos. 97, 172, 186.

## IV.  <u>Conclusions of Law</u>:

The Court enters the following conclusions of law:

104.  Ownership interests are defined by the law of the State in which the interest arose.  *United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013 (8th Cir. 2003).

105.  Under Arkansas law, acts of ownership include "dominion, and control" over that property. *Stifft v. W.B. Worthen Co.,* 176 Ark. 585, 3 S.W.2d 316, 319 (1928).

106.  Title holders are not necessarily the owners of a given piece of real property.  *Brown v. Brown,* 373 Ark. 333, 345, 284 S.W.3d 17 (2008).

107.  Instead, the title holder may be found to hold title for another, and a court may impose a "resulting trust" where title is found to be held for another.  *Brown v. Brown,* 373 Ark. 333, 345, 284 S.W.3d 17 (2008).

108.  Specifically, a "resulting trust" arises where a property is transferred under circumstances raising an inference that the putative grantee should not have a beneficial interest in the property.  *Brown v. Brown,* 373 Ark. 333, 345, 284 S.W.3d 17 (2008).  Instead, the inference is that the putative grantee only received bare legal title.  *Id.*  Under such circumstances, a resulting trust may arise in favor of the person who caused the property to be transferred.  *Id.*

109.  In the present action, based upon the evidence submitted to the Court, Tony Alamo intended for the title holders in this action to obtain bare legal title and not a beneficial interest in these properties.

110.  As evidence of this fact, Alamo paid the taxes, insurance, mortgage payments, and other expenses through one account he controlled, the Bookkeeper account, and he controlled the

decisions related to the Ministry and these properties.

111.  Accordingly, the Court finds a resulting trust with respect to these six properties with title holders holding title for Tony Alamo.

112.  The Ministry members claim they own a beneficial interests in these properties because they donated funds to the Bookkeeper account.

113.  However, these contributions were gifts to the Ministry.  *Baker v. Applen,* 181 Ark. 454, 26 S.W.2d 109, 111 (1930) (finding a gift of a horse had been made even where there had been no transfer of a horse because the recipient exercised dominion and control over the horse).

114.  Thus, regardless of their motivation in contributing to the Ministry, they were relinquishing control of that money to Tony Alamo as the decision-maker for the Ministry.

115.  Accordingly, the individual Ministry members have no ownership interests in these properties.

116.  Further, as to Christhiaon Coie's claim, the Court finds Plaintiffs were the first to diligently enforce this judgment against Tony Alamo.

117.  Indeed, although Christhiaon Coie was first in time to file a declaratory action with regard to these properties, Plaintiffs' lawsuit was filed prior to this declaratory action, and Plaintiff has taken all appropriate steps to uncover these assets as being held for Tony Alamo.

118.  Accordingly, Plaintiffs are entitled to priority in collecting the proceeds from the sale of these six properties.  *See Doster v. Manistee Nat. Bank,* 67 Ark. 325, 55 S.W. 137, 142 (1900) (holding "the creditor who exercises superior diligence in that regard by first bringing suit and proceeding to uncover such [fraudulently conveyed] assets is entitled to the proceeds").

119.

**V.**     <u>**Conclusion**</u>**:**

120.    Based upon the foregoing, the Court finds Tony Alamo is the owner of the six properties

described in the Writ of Execution.  ECF No. 101.

121.    The U.S. Marshal's Office is directed to immediately advertise and sell these properties in

accordance with Ark. Code Ann. §§ 16-66-401 to 16-66-507.

122.    For each property, the proceeds of the sale to the six different properties should be distributed

first to the purchase money lienholder (if any) and then to Plaintiffs.  *See* Ark. Code Ann. §

16-66-203(b)(2).

**ENTERED this 31st day of October 2013.**

/s/   Barry A. Bryant

HON. BARRY A. BRYANT

U.S. MAGISTRATE JUDGE
