IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SPENCER ONDRISEK and                                             PLAINTIFFS
SETH CALAGNA

vs.                                    Civil No. 4:08-cv-04113

BERNIE LAZAR HOFFMAN a/k/a                                       DEFENDANT
TONY ALAMO

## ORDER

Before the Court are the claims to ownership filed by seventy-eight (78) individuals who allege they are the owners of the properties at issue in the Second Writ of Execution. ECF Nos. 205-282. On December 23, 2013, the Court entered an order directing these individuals to complete a questionnaire prior to this hearing. ECF No. 283. Of the 78, only twenty-six (26) individuals completed this questionnaire. ECF Nos. 284, 288-312. The Court will refer to these individuals as "Claimants." The Court held a hearing on February 5, 2014 to address these 26 claims. ECF No. 321. This matter is now ripe for consideration.

**1.   Background:**

On June 2, 2011, the jury entered a verdict on behalf of Plaintiffs Spencer Ondrisek and Seth Calagna and against Bernie Lazar Hoffman also known as Tony Alamo ("Alamo") for $66,000,000. ECF No. 61. The Court adopted the jury verdict and entered a Final Judgment for Plaintiffs in the amount of $66,000,000.00. ECF No. 62. Thereafter, Defendant appealed this Final Judgment to United States Court of Appeals for the Eighth Circuit. ECF No. 73. The Eighth Circuit reduced this award to a total of $15,000,000.00 for each Plaintiff. ECF No. 81. The Court then entered an Amended Final Judgment totaling $30,000,000.00 plus interest for both Plaintiffs, which was consistent with the Eighth Circuit's mandate. ECF No. 82.

1

On May 14, 2013, Plaintiffs requested a Second Writ of Execution, seeking to satisfy this judgment and execute on twelve different properties[1] they claim are actually owned by Alamo and are being held for Alamo.  ECF No. 142.  None of these properties are titled in Alamo's name. *Id.* On October 30, 2013, the Court issued this Second Writ of Execution.  ECF No. 196.  In the Second Writ of Execution, any person or entity asserting an ownership interest in the twelve properties was directed to assert a claim in writing on or before December 6, 2013.  *Id.* Seventy-eight individuals filed claims to these twelve properties.  ECF Nos. 205-282.

On December 23, 2013, the Court then set a hearing to address these ownership claims.  ECF No. 283.  In the order setting this hearing, the Court directed all of these individuals to complete and sign an eighteen-page questionnaire.  *Id.* The Court set a deadline of January 21, 2014 to return that questionnaire and stated "**Failure to complete, sign and return the questionnaire on or before January 21, 2014 may result in the denial of the claim.**" *Id.* (emphasis in the original).  As noted above, only 26 individuals, the Claimants, completed, signed, and returned this questionnaire on or before January 21, 2014.  ECF Nos. 284, 288-312.

The Court held a hearing on February 5, 2014 to address these 26 claims.  ECF No. 321.  At this hearing, the Claimants who completed the questionnaires as directed by the Court were present.[2] During this hearing, the Court offered the Claimants the opportunity to provide documentation and testimony in support of their ownership claims.  During this hearing, Plaintiffs also introduced as

---

[1] The property descriptions can be found at ECF No. 196-1.

[2] Two of the 26 individuals contacted the Court beforehand and notified the Court they would not be present at this hearing.  ECF No. 321 at 7-8.  These individuals are Frank Fazzalero and Jack Ray Garner.  Because they notified the Court before the hearing that they would be absent, the Court will still consider their claims.

an exhibit the property records of the twelve properties at issue with the Second Writ of Execution.

**2.     Applicable Law:**

To challenge a forfeiture action, an individual must have constitutional standing under Article III. *See U.S. v. White,* 675 F.3d 1073, 1078 (2012). In the current action, the seizure and sale of these properties is being conducted by a private party to enforce a civil judgment and is not a forfeiture action. *See U.S. v. Twelve Thousand, Three Hundred Ninety Dollars ($12,390.00),* 956 F.2d 801, 809 (8th Cir. 1992) (holding Federal forfeiture actions are "initiated by the government" and are not civil cases between private parties).

Further, this seizure and sale is being conducted pursuant to Arkansas Law. *See* Ark. Code Ann. § 16-66-201 (2003) (listing the properties subject to execution). *See also* FED. R. CIV. P. 69(a)(1) (stating "[t]he procedure on execution–and in proceedings supplementary to and in aid of judgments or execution–must accord with the procedure of the state where the court is located . . .").

However, although this is a private action to enforce a judgment through a writ of execution, constitutional standing under Article III is still required, and these federal forfeiture actions are instructive in determining whether the Claimants in the present action have standing to contest this sale. *See Miller v. Redwood Toxicology Laboratory, Inc.,* 688 F.3d 928, 934 (8th Cir. 2012) (recognizing Article III standing as presenting a question of justiciability and "if it is lacking, a federal court has no subjective matter jurisdiction over the claim").

Specifically, "[t]o establish constitutional standing, 'a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property. . . .'" *See White,* 675 F.3d at 1078 (citation omitted). An ownership interest sufficient to satisfy the standing requirements of Article III "can be shown by actual possession, control, title, and financial

3

stake." *Id.* (citation and quotations omitted).  This standard has been repeatedly cited and applied in Eighth Circuit cases to determine whether an individual has constitutional standing under Article III to contest a forfeiture action.  *See, e.g., U.S. v. Timley,* 507 F.3d 1125, 1129 (8th Cir. 2007).

These forfeiture cases also provide guidance in determining the process for assessing the validity of the claims in this case.  *See U.S. v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013-14 (8th Cir. 2003).  In *United States v. One Lincoln Navigator 1998,* the Eighth Circuit held the threshold issue in forfeiture actions was to first determine whether an individual has Article III standing to contest the forfeiture.  *Id.*  In that case, one of the claimants had paid for the vehicle in dispute, and the other claimant was the registered owner of the vehicle.  *Id.*  Those individuals were found to have constitutional standing.  *Id.*  The Eighth Circuit then held that because constitutional standing had been established, the district court was required to examine the merits of the individuals' claim to determine whether those individuals qualified as actual owners under state law.  *Id.*  Such an action was likened to a "quiet title action to determine the respective ownership interests."  *Id.* at 1015.

Consistent with *United States v. One Lincoln Navigator 1998*, the Court held an initial hearing on February 5, 2014 to first determine whether any of the individual Claimants meet the standing requirements under Article III.  This hearing was an evidentiary hearing.  *See U.S. v. 1998 BMW "I" Convertible, Vin #WBABJ8324WEM20855,* 235 F.3d 397, 400 (8th Cir. 2000) (favoring an evidentiary hearing with live testimony and witnesses to resolve factual disputes regarding standing).  Also consistent with *United States v. One Lincoln Navigator 1998*, and as further outlined in this Order, because two of the Claimants have demonstrated a sufficient ownership interest to satisfy Article III standing as to two of the properties, the Court must now hold a trial to address the

4

merits of their ownership claims.

**3.     Discussion:**

As outlined above, Article III standing "can be shown by actual possession, control, title, and financial stake." *See White,* 675 F.3d at1078 (citation and quotations omitted).  In the present action, based upon the Claimants' responses to the questionnaires and their testimony at the hearing in this matter, only two of the Claimants have demonstrated sufficient evidence of ownership to satisfy Article III standing.  These two individuals are Douglas Brubach and William Wattles.  The remainder of the individual have not produced sufficient evidence of ownership to satisfy Article III.

**A.     Douglas Brubach and William Wattles**

Specifically, Douglas Brubach testified at the hearing in this matter that his name is on the title to the property at 210 Redcut Road.  ECF No. 321 at 109.  Upon review of the property records from the Miller County Tax Assessor's Office, it appears Mr. Brubach may still be a record title holder to this property, and "MORALES-STREIT-BRUBACH" are listed as the owners of this property.  Plaintiffs' Hearing Ex. 1, Tab 9.  Accordingly, the Court finds Mr. Brubach has supplied sufficient evidence of ownership of 210 Redcut Road to satisfy Article III.  However, consistent with the analysis outlined below, to the extent Mr. Brubach claims an ownership interest in any of the other properties at issue in the Second Writ of Execution, the Court finds his claim is only a generalized claim, and he has not produced sufficient evidence of ownership to satisfy the requirements of Article III standing as to any of the other properties.

Likewise, William Wattles testified at the hearing in this matter that he is on the title to the property at 944 Locust.  ECF No. 321 at 190.  Upon review of the property records from the Miller County Tax Assessor's Office, it appears Mr. Wattles may still be on the title to this property, and

"REID ALPHONSO & WATTLES WILLIAM" are listed as the owners to this property. Plaintiffs' Hearing Ex. 1, Tab 10. Accordingly, the Court finds Mr. Wattles has supplied sufficient evidence of ownership of 944 Locust to satisfy the standing requirements of Article III. However, consistent with the analysis outlined below, to the extent Mr. Wattles claims an ownership interest in any of the other properties at issue in the Second Writ of Execution, the Court finds his claim is only a generalized claim, and he has not produced sufficient evidence of ownership to satisfy the requirements of Article III standing as to any of the other properties.

### B. Remaining Twenty-Four Individuals

The remaining twenty-four individuals have not supplied sufficient evidence of ownership to satisfy Article III standing. These remaining individuals are the following: (1) Jack Garner; (2) Alan Johnson; (3) Albert Krantz; (4) Anita Willis; (5) Anna Moan; (6) Anthony Calagna; (7) Barbara Calagna; (8) Christopher Foley; (9) David Romero; (10) Debra Ondrisek; (11) Delmon Jay Porter; (12) Frank Fazzalero; (13) Gail Brubach; (14) Gary Hallet; (15) Greg Seago; (16) Jon Curry; (17) Mike Lowe; (18) Paul Bolpa; (19) Beky Avila; (20) Robert Walker; (21) Rocky Hathaway; (22) Steve Crook; (23) Suzette Brown; and (24) Zechariah Edwards.

For these individuals, based upon their testimony at the hearing and their responses to the questionnaires in this matter, their claims to ownership are general claims based upon being part of the purported Tony Alamo Christian Ministries and their expectation of being part-owners in these properties. ECF Nos. 284, 288-312, 321. For instance, Alan Johnson claims an ownership interest as a church member and claims he is "entitled to benefits in the ministry" including the benefit of the properties belonging to the purported ministry. ECF No. 321 at 21-22. As another example, Suzette Brown, claims an ownership interest because "[e]veryone in the ministry has joint ownership interest as members of the ministry and we have all things in common as described in the book of

Acts of the Bible." ECF No. 310, P. 2. The remainder of the Claimants base their claim to ownership of these properties upon similar statements. ECF Nos. 284, 288-312, 321.

Such a generalized claim which does not demonstrate any type of "ownership interest" is not sufficient to confer standing. *See U.S. v. One 1990 Chevrolet Corvette, VIN # 1G1YY3384L5104361,* 37 F.3d 421, 422 (8th Cir. 1994) (finding a "nominal owner who lacks possession of the defendant property and did not exercise dominion and control over it does not have an interest sufficient to have standing to challenge forfeiture").

As a final note, during the hearing in this matter, the Claimants repeatedly referenced a case from the United States Supreme Court in support of their claims to ownership. *See Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 (1985). Their reliance upon this case is somewhat confusing because this case does not relate to property ownership but instead addresses whether the Tony and Susan Alamo Foundations ("Foundation") was subject to the Fair Labor Standards Act ("FLSA"). In that case, the Supreme Court ruled against the Foundation and held it was subject to the FLSA despite its claims to the contrary. Accordingly, the Court finds this case does not support the Claimants' claims to property ownership.

  **C.**  **Other Individuals**

Further, the Court will not consider the ownership claims of any individuals who did not complete the questionnaire (ECF No. 283) as directed by the Court. Each person who filed a claim (ECF Nos. 205-282) was given their own copy of the questionnaire, and this questionnaire was sent to the address that individual provided to the Court. These individuals were given approximately one month to respond, which is more than sufficient time to respond. These individuals were warned that their failure to comply with the Court's order could result in the dismissal of their claim.

These individuals have also been actively involved in this litigation for nearly one year in

contesting the Court's original Writ of Execution (ECF Nos. 102-128, 135-140) and now the Second Writ of Execution (ECF Nos. 205-282). These individuals are fully aware of the proceedings in this matter. Furthermore, these individuals have had over a month since the hearing in this matter to contact the Court regarding this questionnaire, and the Court has received no such correspondence. Accordingly, the Court dismisses their claims for failure to comply and will not address them further.

**4.     Conclusion:**

Consistent with the foregoing, the Court finds Douglas Brubach has standing to assert an ownership interest in 210 Redcut Road and William Wattles has standing to assert an ownership interest in 944 Locust.

For the remainder of the properties described in the Second Writ of Execution, the Court directs the U.S. Marshal's Office to immediately advertise and sell these properties in accordance with Ark. Code Ann. §§ 16-66-401 to 16-66-507. For each of these ten different properties, the proceeds of the sale of each should be distributed first to the purchase money lienholder (if any) and then to Plaintiffs. *See* Ark. Code Ann. § 16-66-203(b)(2).

Further, the Court sets a bench trial in this matter for **April 30, 2014 at 9:00 AM in Texarkana, Arkansas** to address the merits of the ownership claims of Douglas Brubach in 210 Redcut Road, Fouke, Arkansas and William Wattles in 944 Locust, Texarkana, Arkansas. These Claimants should appear and be prepared to present evidence of their ownership in the respective properties. **Failure to appear may result in a claimed property interest being extinguished**.

ENTERED this 12th day of March 2014.

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE